Citation Nr: 1550118 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 05-35 521A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include depressive disorder not otherwise specified (depression NOS) and mood disorder.


REPRESENTATION

Appellant represented by: Kathy A. Lieberman, Esq.


ATTORNEY FOR THE BOARD

N. Nelson, Associate Counsel




INTRODUCTION

The Veteran served on active duty from August 1984 to July 1992.

These matters come before the Board of Veterans' Appeals (Board) on appeal from an October 2004 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, which denied service connection for the claimed disability. 

The Veteran also initially appealed issues of service connection for a bilateral knee disability and a hysterectomy. With regard to the claim for service connection for a hysterectomy, the Veteran did not perfect this appeal. Specifically, a November 2005 Substantive Appeal to the Board (VA Form 9) expressly limited the appeal by checking box 9B and listing the issue of service connection service connection for a bilateral knee pain and a mood disorder, and explaining the Veteran's contentions for the two issues in box 10. There is no indication the Veteran or her representative were confused by the VA Form 9. See Evans v. Shinseki, 25 Vet. App. 7, 15-17 (2011) (finding that VA must seek clarification from the appellant if there is a "perceived concern about how the appellant had filled out the Form 9" that leaves a question as to whether the appellant wished to continue to appeal an issue). As such, the claim for service connection for a hysterectomy is not before the Board. With regard to the claim for service connection for knee pain, the RO granted service connection for bilateral knee disabilities in a January 2006 rating decision. As such, the claim for service connection for a bilateral knee disability is no longer on appeal before the Board. See generally Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997). 

In November 2008, the Board denied the claim for service connection for an acquired psychiatric disorder. The Veteran appealed the Board decision to the United States Court of Appeals for Veterans Claims (Court), which granted a Joint Motion for Remand (JMR) in October 2009 and remanded the case to the Board for additional development. 

The Board remanded the case in November 2010, April 2012, and July 2013 for further development. The remands' directives included obtaining the Veteran's service treatment records (STRs), obtaining VA and non-VA treatment records, and scheduling the Veteran for a VA examination to determine the nature and etiology of any diagnosed psychiatric disorder. STRs, VA medical records, and private medical records have since been associated with the claims file. In addition, the Veteran had VA examinations in July 2011, August 2012, and September 2014, and the examination reports are in the claims file. The Board is satisfied that there has been substantial compliance with the remands' directives and will proceed with review. See Stegall v. West, 11 Vet. App. 268 (1998).


FINDINGS OF FACT

1. The Veteran was treated for adjustment disorder with depressed mood, atypical grief reaction, and brief reactive psychosis in service.

2. The Veteran has had post-service diagnoses of mood disorder, depression NOS, and unspecified depressive disorder, which are not etiologically related to service.


CONCLUSION OF LAW

The criteria for service connection for an acquired psychiatric disorder have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 
16 Vet. App. 183 (2002). VA notice letters must also include notice of a disability rating and an effective date for award of benefits if service connection is granted. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

Here, the RO provided a notice letter to the Veteran in January 2004, prior to the initial adjudication of the instant claim. The letter notified the Veteran of what information and evidence must be submitted to substantiate the claim for service connection, what information and evidence must be provided by the Veteran, and what information and evidence would be obtained by VA. The Veteran was told to inform VA of any additional information or evidence that VA should have, and was told to submit evidence to the RO in support of her claim. The letter also provided the Veteran with notice of the type of evidence necessary to establish a disability rating and effective date. The content of the letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). 

The record establishes that the Veteran has been afforded a meaningful opportunity to participate in the adjudication of her claim. The Board notes that there has been no allegation from the Veteran or her representative that she has been prejudiced by any of notice defects. See Shinseki v. Sanders, 556 U.S. 396 (2009). Thus, there is no prejudice to the Veteran in the Board's considering this case on its merits. The Board finds that the duty to notify provisions have been fulfilled, and any defective notice is harmless and nonprejudicial to the Veteran. 

The Board further finds that all relevant evidence has been obtained with regard to the Veteran's claim, and the duty to assist requirements have been satisfied. All available service treatment records (STRs) were obtained, and VA medical records and private treatment records are associated with the claims file. The Board has reviewed the Veteran's statements and medical evidence of record and concludes that there is no outstanding evidence with respect to the Veteran's claim. 

The Veteran underwent VA examinations in August 2004, July 2011, August 2012, and September 2014 to obtain medical evidence regarding the nature and etiology of the claimed disability. The Board finds the VA examinations adequate for adjudication purposes. The examinations were performed by VA psychologists and psychiatrists based on review of the claims file, solicitation of history and symptomatology from the Veteran, and examination of the Veteran. The examination reports are accurate and fully descriptive. Opinion is provided as the nature and etiology of any diagnosed psychiatric disorders. The July 2011 VA examiner noted "it would be with resort to mere speculation to state that Veteran Axis I diagnosis of Depression NOS is related to the appellant's military service." Similarly, the September 2014 VA examiner indicated that the "precise etiology cannot be determined without resort to mere speculation" and as such the Board carefully considered whether another remand was necessary. See e.g. Jones v. Shinseki, 23 Vet. App. 382 (2010). A review of the opinions provided, however, reflects that the examiners very clearly expressed the opinion they meant to convey. The July 2011 VA examiner clearly felt the condition was not related to service and was saying that in order to link it to service a speculative opinion would be required. In other words, the examiner was using speculation in the exact opposite way Jones imagined. Furthermore, the examiner provided a rationale which cited to the multiple stressors the Veteran herself reported. Furthermore, VA obtained two additional examinations after this examination, to specifically consider the Veteran's report of continuity of symptoms. The September 2014 VA examiner used this phrase "resort to speculation" in the context of explaining that he could not pinpoint the exact cause of the condition but clearly had an opinion as to the relationship between the current condition and the symptoms noted in service. The totality of the report reflects that the examiner provided an opinion and supported the opinion with a rationale (onset too far removed, no objective findings the condition was chronic during service and Veteran's own report as to cause of condition). As the report must be read as a whole, it is clear that the examiner was not simply resorting to speculation or unable to provide an opinion. See Acevedo v. Shinseki, 25 Vet. App. 286, 294 (2012); see also Monzingo v. Shinseki, 26 Vet. App. 97, 105, (2012)(noting an examination is adequate when it "sufficiently inform[s] the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion"). As such, although the phrase appears in the opinions, it does not render the examinations inadequate as there is no indication that the opinion provided was speculative. As such, the Board finds that the Veteran has been afforded adequate examinations. The Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion for the claimed disability has been met. See 38 C.F.R. § 3.159(c)(4); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

The Board finds that the duties to notify and assist the Veteran have been met, so no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim.

Pertinent Law and Regulations

Service connection will be granted for disability resulting from a disease or injury incurred in or aggravated by military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Service connection requires competent evidence showing (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004), citing Hansen v. Principi, 16 Vet. App. 110, 111 (2002); see also Caluza v. Brown, 7 Vet. App. 498 (1995). Service connection may be also granted on a secondary basis for a disability that is proximately due to or the result of an established service-connected disorder. See 38 C.F.R. § 3.310(a) (2013); Allen v. Brown, 7 Vet. App. 439 (1995).

Additionally, where a veteran served ninety days or more of active service, and certain chronic diseases, including certain types of psychoses, become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id. 38 C.F.R. § 3.384 defines psychosis as including a brief psychotic disorder, delusional disorder, psychotic disorder due to general medical condition, psychotic disorder, not otherwise specified, schizoaffective disorder, schizophrenia, schizophreniform disorder, shared psychotic disorder, and substance-induced psychotic disorder. 38 C.F.R. § 3.384.

With disability compensation claims, VA adjudicators are directed to assess both medical and lay evidence. The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a competent source. Second, the Board must then determine if the evidence is credible, or worthy of belief. See Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). Third, the Board must weigh the probative value of the proffered evidence in light of the entirety of the record.

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may include statements conveying sound medical principles found in medical treatises, and may also include statements from authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1).

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). A layperson is not generally capable of opining on matters requiring medical knowledge. See 38 C.F.R. § 3.159(a)(2); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). 

Once the evidence has been assembled, it is the Board's responsibility to evaluate the evidence. 38 U.S.C.A. § 7104(a). The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. In weighing credibility, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self-interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness. See generally Caluza v. Brown, 7 Vet. App. 498 (1995). The Board may weigh the absence of contemporaneous medical evidence against the lay evidence in determining credibility, but the Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006); but see Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000) (evidence of a prolonged period without medical complaint after service can be considered along with other factors in the analysis of a service connection claim). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.102, 4.3. When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49, 53-54 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996).

Service Connection for an Acquired Psychiatric Disorder

The Veteran contends that she has a mood disorder secondary to a hysterectomy. She also contends that she was diagnosed with situational mood disorder during active duty years prior to the hysterectomy and that her mental state has gotten progressively worse over the years. She states that she takes daily medication. See the February 2005 notice of disagreement; August 2005 statement; November 2004 VA Form 9.

STRs indicate that in August 1985, the Veteran was seen for a depressive episode. She reported having suicidal ideation. On February 8, 1986, she reported feeling depressed and angry. She was assessed as having adjustment disorder with depressed mood and histrionic, immature personality traits. On February 19, 1986, the Veteran reported that her problems had resolved, she felt better and was no longer depressed. Her adjustment disorder with depressed mood was noted as being in remission. In June 1987, the Veteran reported that her sister was in a coma. She was noted to display anxious behavior and was giggling inappropriately, and was assessed as having acute adjustment reaction. The next day, she was admitted to the hospital for five days with a diagnosis of atypical grief reaction and brief reactive psychosis. Upon discharge, the psychosis was found to be resolved and she was noted to be stable and not suicidal. In January 1990, the Veteran reported having marital issues. She was found to be not clinically depressed or have suicidal ideation.

The evidence of record indicates that although the Veteran was treated for adjustment disorder with depressed mood, atypical grief reaction, and brief reactive psychosis during active service, those diagnoses resolved within weeks. The weight of the competent and credible evidence also shows that any current diagnoses, depression NOS and/or mood disorder, are not related to the adjustment disorder with depressed mood or atypical grief reaction that the Veteran was treated for in service.

Private treatment records from Dr. R.W. indicate that in April 2000, the Veteran reported having increased anxiety, some crying spells, and fatigue. She stated that she had increased work stress and home stress. Dr. R.W. assessed the Veteran as having anxiety and fatigue with probable mild depression. He prescribed Zoloft. In May 2000, the Veteran reported that she was feeling much better since starting Zoloft.

In August 2004, the Veteran had a VA mental disorders examination. She reported that since having a hysterectomy the prior year, she felt "off balance." She stated that she cried over small things, did not do things she used to do and did not know why, and had bouts of agitation and depression. She denied having panic attacks, excessive worry, or suicidal or homicidal thoughts. The examiner diagnosed mood disorder due to status post hysterectomy with a rule out for hormonal imbalance, indicating that the Veteran had intermittent and limited symptoms of depression, including bouts of agitation, tearfulness, sleep impairment, and an anhedonia in the context of being status post hysterectomy. The examiner noted that the Veteran's then-current condition was not a chronic psychiatric condition, and concluded that it was more likely unrelated to the in-service depressive episodes, adjustment disorder, depressed moods, and atypical hysterical grief reaction because the Veteran stated that the symptoms had begun after the hysterectomy one year prior.

In April 2005, the Veteran reported at VA that she was not feeling unhappy, depressed, or anxious, and she was not having crying spells or insomnia. In June 2005, the Veteran reported that she was feeling very anxious. She was taking Lexapro, which was switched to Venlafaxine.

The results of a depression screening at VA in January 2010 were negative.

In July 2011, the Veteran had another VA examination. She reported that she was married to her second husband and had a 20-year-old son, that her sister committed suicide by overdosing on pills, and that she had been sued after being involved in a three-car collision in 2008 or 2009. The examiner diagnosed depressive disorder NOS, with symptoms included depressed mood, chronic sleep impairment, and disturbances of motivation and mood. The examiner indicated that it would be mere speculation to state that the Veteran's diagnosis was related to her military service, including in-service diagnoses, as the Veteran reported the stressor as the suicide of her sister. The examiner noted that other relevant information included the lawsuit, childhood issues with the Veteran's father, divorce from the Veteran's first husband, and motherhood challenges, and concluded that there was no objective evidence that the Veteran's diagnosis of depression NOS was secondary to any specific medical illness or injury.

Private treatment records from Dr. W.T. indicate that in March 2012, the Veteran reported that she had an anxiety attack two weeks prior and was given a Xanax at the hospital but she had not needed to take any more since then. In May 2012, the Veteran reported ongoing anxiety, trouble sleeping, feeling of worthlessness, feeling of guilt, and impaired concentration. She was started on Celexa.

The Veteran had a third VA mental disorders examination in August 2012. The Veteran reported seeking mental health treatment on and off after her sister died. She also sought mental health treatment from 1992 to 1993 and from 1994 to 1996, because she was having "a hard time dealing with things," but could not remember the names of the mental health providers. She indicated that she had been prescribed Celexa for several years by a private physician, Dr. W. She reported having mild anxiety for a couple of hours at night time during the week, mild depressed mood 3-4 days per week, and associated symptoms including anhedonia, sleep impairment, and low energy and concentration. The examiner indicated that her symptoms included depressed mood and chronic sleep impairment. The Veteran took the Structured Interview of Malingered Symptomatology (SIMS), which provides an overall estimate of the likelihood that an individual is feigning or exaggerating symptoms of psychiatric or cognitive dysfunction. The Veteran's total score was elevated above the recommended cutoff score for the identification of likely feigning, meaning that the Veteran endorsed a number of symptoms and impairment that are highly atypical of individuals who have genuine psychiatric or cognitive disorders. The examiner opined that it was less likely as not that the depression NOS was related to the Veteran's military service, including in-service disease or injury or the result of a service-connected disability. The examiner further opined that it was at least as likely as not that the depression NOS was related to a number of post-military stressors including conflict with her husband and son, limited support system outside of family, unemployment, and a 2009 lawsuit after an auto accident. 

In May 2013, the Veteran reported to Dr. W.T. that she was having problems falling asleep and staying asleep and she was isolating herself. 

In February 2014, the Veteran reported to Dr. W.T. that she could not sleep at night due to anxiety. She said she stayed mostly in her house and did not like to be around people due to anxiety. 

The Veteran was afforded a fourth VA mental disorders examination in September 2014. She reported that she had "too much chatter" in her head and got upset quickly, particularly in the evenings with her husband and son. She stated that she had anxiety if she went out and that she heard voices that told her to do things. The examiner indicated that the Veteran's in-service diagnoses were suggestive of temporal responses to a stressor, not chronic conditions. The examiner also noted that in the August 2012 VA examination, the Veteran did not attribute her mental health issues to military service, but rather gave a "vague account" of what she attributed her depression to. The examiner indicated that the Veteran's symptoms included depressed mood, anxiety, and chronic sleep impairment. Testing indicated that the Veteran had a mild cognitive impairment, thought it was not conclusive, severe anxiety and moderate to severe depression. Her diagnosis was unspecified depressive disorder, with a self-report of psychotic features. The examiner opined that the depressive disorder was not caused by or a result of the in-service documentation of depressed moods, adjustment disorder, or atypical hysterical grief reaction, as the onset was too far removed from the in-service diagnoses to be related, and there was no objective medical evidence found that the in-service conditions became chronic. The examiner noted that she saw the Veteran ten years prior, for the August 2004 VA examination, and at that time she attributed her depression to a hysterectomy. The examiner stated that she could not determine the etiology of the current diagnosis without resort to mere speculation. The examiner noted that there was no objective evidence of the onset of psychosis within one year of discharge from active service, and that the depressive disorder was not caused by or aggravated by the service-connected varicose veins, as the medical literature contained no support for varicose veins causing or aggravating depression.

The Board finds the VA examiners' opinions to be competent and credible, and as such, they are entitled to significant probative weight. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994). All four examinations were conducted by psychiatrists or psychologists, indicating that they had the expertise or specialized knowledge of psychiatric disorders. Furthermore, all four examination opinions were rendered after the examiners reviewed the Veteran's claims file, solicited a medical history from the Veteran, and conducted a physical examination of the Veteran. See Prejean v. West, 13 Vet. App. 444 (2000) (factors for assessing the probative value of a medical opinion include the examiner's access to the claims folder and the Veteran's history, and the thoroughness and detail of the opinion). The examiners provided the facts and rationale on which they based their opinions. All four examiners concluded that any current diagnoses were less likely than not related to the in-service diagnoses, which had resolved when the Veteran separated from service, and noted the presence of other stressors such as her sister's death and a lawsuit. The September 2014 VA examiner explained the condition was too far removed from the symptoms in service, there was no objective medical evidence the conditions noted in service became chronic and also cited to the Veteran's own report as to what caused her symptoms. 

The only evidence of record linking the condition to service is the Veteran's own statements. The Board does not doubt the Veteran is sincere in her belief that her claimed psychiatric condition is related to her service. As a lay person, she can report symptoms of anxiety and depressed mood, including indicating the symptoms continued since service, but her statements cannot be used to diagnose a psychosis in the year after her service separation nor can it be used to determine whether any diagnosed psychiatric disorder is related to a diagnosis or other event in service. The diagnosis and etiology of a psychiatric disorder goes beyond a simple and immediately observable cause-and-effect relationship and requires medical knowledge to review and interpret clinical tests. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (explaining in footnote 4 that a Veteran may be competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions). Indeed, such an opinion as to diagnosis and cause of psychiatric disorders requires interpretation of symptoms, knowledge of the mental health field and consideration of the effects of other medical conditions, psychosocial and environmental problems and other levels of functioning. See The American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 37-45 (4th ed. 1994) (describing the multiaxial assessment and explaining that it allows for considerations of mental disorders, general medical conditions, psychosocial and environmental problems that can all contribute to the mental disorder). Evaluating the evidence as a whole reflects no competent evidence of a diagnosis of a psychosis as defined by 38 C.F.R. § 3.384 within one year of service. Indeed, as noted above, multiple VA examiners reviewed the records and opined a psychosis had not been present during that time frame. Furthermore, to the extent to which the Veteran has a disorder other than those listed in 38 C.F.R. § 3.384, the lay assertion as to etiology is not competent as the Veteran has not been consistent in her assertions regarding the origins of her depression. As noted by the VA examiner in the September 2014 VA examination, the Veteran has at various times attributed her symptoms to a hysterectomy, her sister's death, and/or given a vague account. As such, the Board finds the Veteran's statements probative with regard to establishing the Veteran's current symptoms, but finds little probative value with regard to establishing service connection.

In sum, the weight of the competent and credible evidence record weighs against the claim for service connection for an acquired psychiatric disorder, to include depression NOS and mood disorder. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Accordingly, service connection for an acquired psychiatric disorder is not warranted.


ORDER

Service connection for an acquired psychiatric disorder, to include depression NOS and depressed mood, is denied.




____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs